## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LORI HAGUE, individually, and on behalf of all others similarly situated,

Plaintiff,

- against -

SUNPATH, LTD,

Defendant.

Docket No. 3:21-cv-08053-ZNQ

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

A.  Preliminary Statement……………………………………………………………...1

B.  Standard of Review to be Applied to Defendant's Motion to Dismiss for
Lack of Personal Jurisdiction……………………………………………………...2

C.  Defendant Cannot Blind Itself to the Consistent Illegal Marketing Tactics Used by
its Telemarketing Affiliates………………………………………….………..…4

D.  Defendant Cannot Use its 12(b)(2) Motion as an End-Run on the Merits……………14

E.  Conclusion………………………………………………………………………15

# TABLE OF AUTHORITIES

*Abedi v. New Age Med. Clinic PA*,

    2018 WL 3155618 (E.D. Cal. June 25, 2018)……………………………………….....8

*Abramson v. Agentra, LLC*,

    2018 WL 6617819 (W.D. Pa. Dec. 18, 2018)………………………………………..6

*Abramson v. CWS Apartment Homes, LLC*,

    2016 WL 6236370 (W.D. Pa. Oct. 24, 2016)………………………………………6

*Baker v. Carribean Cruise Line, Inc.*,

    2014 WL 880634 (D. Ariz. Mar. 6, 2014)………………………………………………7

*Branham v. ISI Alarms, Inc.*,

    2013 WL 4710588 (E.D. N.Y. Aug. 30, 2013)………………………………………7

*Cardenas v. Spinnaker Resorts, Inc.*,

    No. CV162466JLLJAD, 2016 WL 4154921 (D.N.J. Aug. 3, 2016)…………………12, 13

*Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*,

    723 F.2d 357 (3d Cir. 1983)……………………………………………………..3

*Connor v. Lifewatch, Inc.*,

    2014 WL 4198883 (D.S.C. Aug. 20, 2014)………………………………………13

*Cunningham v. Cap. Advance Sols., LLC*,

    No. CV 17-13050 (FLW), 2018 WL 6061405 (D.N.J. Nov. 20, 2018)………………13, 14

*Dobronski v. SunPath Ltd.*,

    2020 WL 8840311 (E.D. Mich. July 27, 2020)………………………………………1, 2, 5

*Edmond v. United States Postal Serv. Gen. Counsel*,

    949 F.2d 415 (D.C.Cir.1991)……………………………………………………..16

*Fabricant v. Fast Advance Funding, LLC*,

    2018 WL 6920667 (C.D. Cal. Apr. 26, 2018)……………………………………..…7

*Fitzhenry v. Ushealth Grp., Inc.*,

    2016 WL 319958 (D.S.C. Jan. 27, 2016)………………………………………13

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,

    141 S. Ct. 1017 (2021)…………………………….……………………………2

*Grand Entertainment Group v. Star Media Sales*,

    988 F.2d 476 (3d Cir. 1993)……………………………………………………14

ii

*Hansen v. Neumueller GmbH*,

    163 F.R.D. 471 (D. Del. 1995)…………………………………………………………3

*Hastings v. Triumph Prop. Mgmt. Corp.*,

    2015 WL 9008758 (S.D. Cal. Dec. 15, 2015)…………………………………………...8

*Heidorn v. BDD Marketing & Mgmt. Co.*,

    2013 WL 6571629 (N.D. Cal. Aug. 9, 2013)…………………………………………7

*Hicks v. Houston Baptist Univ.*,

    2019 WL 96219 (E.D.N.C. Jan. 3, 2019)…………………………………………..5, 7

*In Re Dish Network, LLC*,

    28 F.C.C. Rcd. 6574, 2013 WL 1934349 (May 9, 2013)……………………………2, 9, 10

*In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*,

    2019 WL 7835630 (N.D.W. Va. Apr. 3, 2019)………………..…………………….9, 11

*Keim v. ADF MidAtlantic, LLC*,

    199 F. Supp. 3d 1362 (S.D. Fla. 2016)…………………………………………………7

*Lowe v. CVS Pharmacy, Inc.*,

    233 F. Supp. 3d 636 (N.D. Ill. 2017)……………………………………………………7

*Luna v. Shac, LLC*,

    2014 WL 3421514 (N.D. Cal. July 14, 2014)…………………………………………...8

*Mellon Bank PSFS, Nat'l Ass'n v. Farino*,

    960 F.2d 1217 (3d Cir. 1992)…………………………………………………………14

*Metcalfe v. Renaissance Marine, Inc.*,

    566 F.3d 324 (3d Cir.2009)…………………………………………………………...3

*Miller v. Ingles*,

    2009 WL 4325218 (W.D.N.C. Nov. 24, 2009)………………………………………...15

*Ott v. Mortg. Invs. Corp. of Ohio*,

    65 F. Supp. 3d 1046 (D. Or. 2014)……………………………………………………7

*Renner v. Lanard Toys Ltd.*,

    33 F.3d 277 (3d Cir.1994)…………………………………………………………...16

*Shelton v. Nat'l Gas & Elec., LLC*,

    2019 WL 1506378 (E.D. Pa. Apr. 5, 2019)……………………………………………6

*Toys "R" Us, Inc. v. Step Two, S.A.,*

 318 F.3d 446 (3d Cir.2003)………………………………………………………...3

*United States v. North Carolina*,

 180 F.3d 574 (4th Cir. 1999)………………………………………………...15

*Weiss v. Grand Campus Living, Inc.*,

 2019 WL 1206167 (S.D. Ind. Mar. 14, 2019)………………………………...8

iv

**A. Preliminary Statement.**

Lori Hague, a New Jersey resident using a New Jersey telephone number with a 732 area code, brought this case under the Telephone Consumer Protection Act after receiving several spam calls from Defendant while in New Jersey and on that New Jersey telephone number.  These calls all involved a pre-recorded voice message, asking Ms. Hague to press '5' on her phone if she was interested in renewing her auto warranty, or to press '9' if she wanted the calls to end.  Ms. Hague has never had any sort of auto warranty with the Defendant and had never asked for these calls. But the calls wouldn't end, no matter how many times Ms. Hague selected that option.  So Ms. Hague finally spoke with a representative on one of these calls, **who expressly told her that they were calling from Sunpath**.  The instant TCPA lawsuit against Sunpath logically then followed.

Sunpath admits that it is in the business of selling auto warranties.  It also admits that it authorizes third-party telemarketing companies to market its products via the placement of phone calls.  Sunpath is plainly aware that these telemarketers are calling people to solicit their business, because its contracts with these third-party companies supposedly require these companies to comply with the TCPA.  It is also plainly aware that the telemarketers it hires consistently and flagrantly violate the TCPA.  Indeed, Sunpath is routinely sued because of these calls all over the country, with over 15 lawsuits filed in the past 4 years for these exact same spam calls.  In many of these cases, Sunpath files the exact same Declaration by its owner, Andrew Garcia, just like it filed here, disclaiming all knowledge of the illegal conduct of its telemarketing vendors.

Nonetheless, Sunpath argues that it cannot be sued in New Jersey for these calls, because it itself did not place these calls to New Jersey.  Sunpath also claims that Ms. Hague failed to sufficiently allege that the calls were placed by it, even though Ms. Hague specifically alleged in the Complaint that the caller expressly confirmed to her that they were calling from Sunpath. Notably, Sunpath's exact arguments were recently rejected in *Dobronski v. SunPath Ltd.*, 2020

1

WL 8840311, at *4 (E.D. Mich. July 27, 2020), where the district court found that the alleged telemarketer's statement that she was "affiliated with Sunpath" was sufficient to warrant an exercise of personal jurisdiction over Sunpath.

This Court should likewise deny Sunpath's Motion to Dismiss, as the district court did in *Dobronski*.  Sunpath cannot simply hire telemarketing agents to hawk its extended car warranties, turn those telemarketers loose on unwitting Americans across the country without any form of monitoring, and then profess total ignorance when its agents illegally contact residents of New Jersey and elsewhere without their consent.  But that is exactly what Defendant has consistently done over the past several years.  Time after time after time, Sunpath has been sued for the illegal telemarketing calls of its agents in courts across the country.  Each time, Sunpath has done the exact same thing – claim that they had no idea their agents were breaking the law, and that the torts of their agents therefore could not subject them to suit in the states where their agent's illegal communications were directed.  At a certain point in time, that excuse loses its credibility.  Once armed with information that its agents are consistently breaking the law, Defendant cannot continue to turn a blind eye to the actions of its marketing agents and then cry foul when it is hauled into court for the actions of its agents.

For the reasons set forth below, it is respectfully submitted that Defendant's Motion should be denied in its entirety, so that Ms. Hague can – at minimum – take jurisdictional discovery into Defendant's contacts with New Jersey and its relationships with its telemarketing affiliates.

**B. Standard of Review to be Applied to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.**

When considering a Rule 12(b)(6) motion, courts are required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff.  *Rocks v. City of Philadelphia,* 868 F.2d 644, 645

(3d Cir.1989).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997).  Plaintiff's factual allegations must be accepted as true and this action can be dismissed only if it appears that the plaintiff cannot prove any set of facts entitling him to relief.  *Wilson v. Quadramed Corp.,* 225 F.3d 350, 353 (3d Cir. 2000).

Similarly, it is "well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 457 (3d Cir.2003).  "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the parties and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.* at 456.  While a plaintiff shoulders the burden of demonstrating sufficient jurisdictional facts, "courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." *Toys "R" Us, Inc.,* 318 F.3d at 456.  Jurisdictional discovery is "particularly appropriate where the defendant is a corporation." *Metcalfe v. Renaissance Marine, Inc.,* 566 F.3d 324, 336 (3d Cir.2009).  "The rationale for this rule is that the plaintiff may be unable to ascertain the extent of the defendant's contacts with the forum state, particularly when that defendant is a corporation, unless some discovery is permitted." *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 473–74 (D. Del. 1995); *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983)("A plaintiff who is a total stranger to a corporation should not be required, unless he has been undiligent, to try such an issue on affidavits without the benefit of full discovery"). A court must determine whether certain discovery avenues, "if explored, might provide the 'something more' needed" to establish personal jurisdiction. *Toys "R" Us,* 318 F.3d at 456.

**C. Defendant Cannot Blind Itself to the Illegal Marketing Tactics Used by its Telemarketing Affiliates.**

Sunpath has a long history of skirting the law to promote its business, which relies on the use of incessant robocalls to harass consumers nonstop into buying an auto warranty. Defendant's business is a volume business. The more consumers that sign up for its auto warranties, the more money Defendant makes. As a result, Defendant has employed a marketing strategy that allows it to blanket potential consumers with calls and prerecorded messages promoting its useless warranties, while at the same time feigning ignorance and claiming it is not responsible for the very actions that sustain its business.

With what are almost certainly extremely low conversion rates on robocall marketing, Defendant's viability depends on its ability to reach as many consumers as possible. Thus, Defendant engages an army of telemarketers, with zero monitoring, to do its marketing for it. When those telemarketers consistently break the law, Defendant just as consistently buries its head in the sand and claims that it contractually prohibits these telemarketers from breaking the law and that it had no knowledge of its telemarketers' actions. In many cases, Defendant—as it did here— introduces a Declaration from its owner Andrew Garcia, disclaiming all knowledge of its telemarketers' actions. Some examples are:

- *Robin Black v. Sunpath, LTD,* 3:21-cv-00023 (M.D.TN.) – Sunpath is sued for robocalls placed by it and its telemarketing vendors. Andrew Garcia submits a Declaration in support of Defendant's Motion to Dismiss identical to the one filed here, claiming that Defendant did not know about the calls placed to the *Black* plaintiff, and that Sunpath does not control who its telemarketing vendors call.[1]

- *Tracey Massey v. Sunpath, LTD,* 1:19-cv-07056 (N.D. Ill.) – Sunpath is again sued for robocalls placed by it, after the representative on the call stated that Sunpath was trying to sell an extended warranty plan.[2] Andrew Garcia again submits a Declaration in support of Defendant's Motion to Dismiss identical to the one filed here, claiming that

---

[1] *See,* Exhibit A.
[2] *See,* Exhibit B, paragraph 16.

Defendant did not know about the calls placed to the *Massey* plaintiff, and that Sunpath does not control who its telemarketing vendors call.[3]

- *Carl Moreland v. Sunpath, LTD,* 6:21-cv-00110-JDK (EDTX) – Sunpath is again sued for robocalls placed by it in an attempt to sell extended auto warranty plans, after the representative on the call expressly stated that the calls were from Sunpath.[4] Andrew Garcia once again submits a Declaration in support of Defendant's Motion to Dismiss identical to the one filed here, again claiming that Defendant did not know about the calls placed to the *Moreland* plaintiff, and that Sunpath does not control who its telemarketing vendors call.[5]

- *Brennan Landy v. Sunpath, LTD,* 1:19-cv-12562-IT (D. Mass.) – Sunpath is again sued for robocalls placed by it in an attempt to sell extended auto warranty plans, after the representative on the call expressly stated that the calls were from Sunpath.[6]

- *Mark Dobronski v. Sunpath, LTD,* 2:19-cv-13094-TGB-EAS (E.D. Mich.) - Sunpath is again sued for robocalls placed by it in an attempt to sell extended auto warranty plans, after the representative on the call expressly stated that the callers were affiliated with Sunpath.[7] Andrew Garcia once again submits a Declaration in support of Defendant's Motion to Dismiss identical to the one filed here, again claiming that Defendant did not know about the calls placed to the *Dobronski* plaintiff, and that Sunpath does not control who its telemarketing vendors call.[8]  The district court then denied Sunpath's Motion to Dismiss for lack of jurisdiction.  *Dobronski,* 2020 WL 8840311.

In addition to these five sample lawsuits, Sunpath has been sued well over a dozen more times for these same exact types of robocalls.[9]  This sort of plausible deniability tactic can only be stretched so far.  Defendant readily admits that it hires these telemarketing agents, who are calling consumers all over the country.  In this case, the Plaintiff's phone number is (732) 535-2493, as specifically alleged in paragraph 22 of the Complaint.  The 732 area code is the area code in the North American Numbering Plan for Central New Jersey and includes Monmouth and Ocean Counties. *See e.g., Hicks v. Houston Baptist Univ.*, 2019 WL 96219, at *4 (E.D.N.C. Jan. 3, 2019)

---

[3] *See,* Exhibit C.
[4] *See,* Exhibit D, paragraph 30.
[5] *See,* Exhibit E.
[6] *See,* Exhibit F, paragraphs 27, 28, 30 and 31.
[7] *See,* Exhibit G, paragraph 43.
[8] *See,* Exhibit H.
[9] *See,* Exhibit I.

(taking judicial notice that the 704 area code covers North Carolina and rejecting a TCPA defendant's challenge to personal jurisdiction)[10].  Thus, Defendant's contacts with this New Jersey number show that Defendant purposefully availed itself of the privilege of conducting activity in this state.  *Id.,* at *4 ("defendant's contacts with North Carolina show that defendant purposefully availed itself of the privilege of conducting activity in the state" where defendant's contact list included phone numbers with a 704 area code).

Therefore, when Defendant called the Plaintiff's 732 phone number at least 8 separate times, they were aware they were specifically targeting a person in New Jersey.  And because they were aware that their actions may cause harm in New Jersey, they are subject to personal jurisdiction here for harms arising from those actions, as courts in this Circuit have consistently recognized.  *See, e.g., Shelton v. Nat'l Gas & Elec., LLC,* 2019 WL 1506378, at *7 (E.D. Pa. Apr. 5, 2019)(rejecting challenge to personal jurisdiction in TCPA matter "because Plaintiff has demonstrated that he was a Pennsylvania resident when he received the call, was physically present in Pennsylvania, and has a Pennsylvania phone number"); *Abramson v. Agentra, LLC*, 2018 WL 6617819, at *4, (W.D. Pa. Dec. 18, 2018) (in a TCPA case, holding that "at this juncture it is reasonable to infer from the allegations in the amended complaint that Agentra purposefully aimed its conduct at Pennsylvania by contacting directly Abramson's Pennsylvania mobile and residential telephone numbers"); *Abramson v. CWS Apartment Homes, LLC*, 2016 WL 6236370, at *4 (W.D. Pa. Oct. 24, 2016)(similarly rejecting personal jurisdiction challenge in TCPA claim and holding that "We likewise find purposeful direction based on Abramson's averment CWS sent the text message to his cell phone bearing a Pennsylvania area code").

---

[10] *See also,* https://en.wikipedia.org/wiki/Area_codes_732_and_848, last visited on July 6, 2021.

Courts have consistently exercised jurisdiction over out-of-state defendants in TCPA cases, based on their actions in targeting an in-state area code. *See e.g., Lowe v. CVS Pharmacy, Inc.*, 233 F. Supp. 3d 636, 645 (N.D. Ill. 2017) (noting that "multiple courts have found calls or text messages to a phone number affiliated with a particular state that violate the TCPA sufficient to satisfy the purposeful direction test for a court of that state to exercise personal jurisdiction over the defendant"); *Hicks v. Houston Baptist Univ.*, 2019 WL 96219, at *4; *Fabricant v. Fast Advance Funding, LLC*, 2018 WL 6920667, at *3 (C.D. Cal. Apr. 26, 2018) (in a TCPA case, finding the plaintiff sufficiently alleged personal jurisdiction where the defendant made unsolicited phone calls to plaintiff's cell phone that had a California area code); *Baker v. Carribean Cruise Line, Inc.*, 2014 WL 880634, at *2 (D. Ariz. Mar. 6, 2014) (finding personal jurisdiction where the complaint alleged "that Defendant made calls to Plaintiff's Arizona number and the fact that those calls are the basis for Plaintiff's [TCPA] claims"); *Branham v. ISI Alarms, Inc.*, 2013 WL 4710588, at *8 (E.D. N.Y. Aug. 30, 2013) (holding that the defendants should have anticipated that the use of a system "to call a New York cell-phone number could subject them to being hauled into court in New York."); *Keim v. ADF MidAtlantic, LLC*, 199 F. Supp. 3d 1362, 1370–71 (S.D. Fla. 2016)("The Moving Defendants should have reasonably anticipated that sending the allegedly TCPA-violating text messages to a Florida resident's Florida cell phone would cause harm in Florida"); *Ott v. Mortg. Invs. Corp. of Ohio*, 65 F. Supp. 3d 1046, 1057 (D. Or. 2014)(finding personal jurisdiction to exist in TCPA case because "many telephone numbers with an Oregon area code in fact are located in Oregon, such that the individual defendants knew or should have known that the telemarketing scheme was aimed at persons in Oregon"); *Heidorn v. BDD Marketing & Mgmt. Co.*, 2013 WL 6571629 (N.D. Cal. Aug. 9, 2013) (finding personal jurisdiction in TCPA case where calls were made to a California resident at a

California number); *Luna v. Shac, LLC*, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014) (finding that the defendant expressly aimed its conduct at California where some of the "thousands of unsolicited text messages" to the "general public" were sent to cell phones with California based area codes); *Abedi v. New Age Med. Clinic PA*, 2018 WL 3155618, at *5 (E.D. Cal. June 25, 2018) (in a TCPA case, finding no basis for finding defendant directly targeted California despite the fact plaintiff received the messages in Merced because among other factors the area code of plaintiff's phone number did not correspond to a location within California); *Hastings v. Triumph Prop. Mgmt. Corp.*, 2015 WL 9008758 (S.D. Cal. Dec. 15, 2015) (in a TCPA case, holding that there was no express aiming at California where calls were made to an Arizona area code and no other evidence indicated that the defendant knew that it was calling individuals in California); *Weiss v. Grand Campus Living, Inc.*, 2019 WL 1206167, at *3 (S.D. Ind. Mar. 14, 2019)(finding the requirements for personal jurisdiction met when defendant sent a text message to an Indiana phone number, noting that "although a text message would be a thin reed to lean on for personal jurisdiction in a typical breach-of-contract matter, it constitutes purposeful direction in this TCPA suit, where the text messages are themselves the gravamen of the complaint").

Defendant's only fallback is its claim that all of these calls were supposedly placed by unidentified telemarketing companies that it hired, and that it personally did not place these calls. Even if true, that raises the questions of *what* Defendant was aware of, and *when* did Defendant become aware of it?  Defendant cannot simply hire telemarketing companies, send them off to robocall consumers nationwide, and then complain that it had nothing to do with the spam robocalls that those companies placed to New Jersey residents while trying to sell Sunpath warranties.  The FCC specifically addressed this exact point in a Declaratory Ruling, when addressing the marketing tactics of DISH Network:

We see no reason that a seller[11] should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, **the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised.** In the case of either actions to enforce section 227(b) or actions to enforce do-not-call restrictions under section 227(c), we stress that nothing in this order requires a consumer to provide proof — at the time it files its complaint — that the seller should be held vicariously liable for the offending call.

*In Re Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6593, 2013 WL 1934349 (May 9, 2013).

As the FCC noted, sellers "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Dish Network,* 28 F.C.C. Rcd. at 6574. Vicarious liability, however, does not require proof of a formal agency relationship; instead, a plaintiff may use principles of apparent authority and ratification to establish such liability. *Id.* at 6584. With regards to ratification, "a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct." *Id.* at 6592. This makes sense when considering the fact that sellers have the ability to keep their marketing affiliates compliant, and when considering that consumers cannot typically identify, locate or otherwise hold accountable these third parties:

> [T]he seller is in the best position to monitor and police TCPA compliance by third-party telemarketers.... We thus agree that, consistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules.... By contrast, allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an

---

[11] "A business is considered a 'seller' under the TCPA if telemarketing calls 'were made to increase the flow of consumers' to the defendant's business." *In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 2019 WL 7835630, at *4 (N.D.W. Va. Apr. 3, 2019)

effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case.... Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief.

*In re Dish Network,* 28 F.C.C. Rcd. at 6588.

As demonstrated by Sunpath's extensive history of being sued over the actions of its marketing affiliates, Defendant is very plainly aware that its telemarketers have been engaging in widespread spam marketing that is targeting consumers all over the country[12].  Yet these affiliates keep going on breaking the laws regarding the use of spam calling, and Defendant goes on denying all knowledge that any of this was taking place.  But as the FCC has made clear, "a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (<u>or reasonably should have known</u>) that the telemarketer was violating the TCPA on the seller's behalf <u>and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct</u>." *Id.* at 6592.

Clearly, Defendant has the ability to monitor the marketing efforts of the telemarketing companies it hires.  As the numerous lawsuits and BBB complaints make clear, Defendant has

---

[12] In addition to the multiple lawsuits filed against Sunpath for years, numerous consumers have complained to the BBB about these spam robocalls from Sunpath.  Since at least March 16, 2020, Sunpath has repeatedly responded to these complaints with the boilerplate claim that "SunPath did not contact the complainant, or authorize any party to contact the complainant on its  behalf. <u>To the extent that any party claimed to represent SunPath or contact the complainant on its behalf,</u> this was done without SunPath's knowledge, approval, or permission." *See,* Exhibit J.  This Exhibit is also available on the BBB's website, at https://www.bbb.org/us/ma/braintree/profile/auto-warranty-plans/sunpath-ltd-0021-133715/complaints, last visited on July 6, 2021.

Sunpath's own identical statements to the BBB on March 16, 2020, June 9, 2020, January 27, 2021 and March 15, 2021 (*See,* Exhibit J, pages 7, 8, 21, 27) all make clear that Sunpath has long been well aware that its telemarketers robocalling people and claiming to be calling from Sunpath.  And yet, this conduct continues unabated to this day.

long been aware that its telemarketers were indiscriminately targeting consumers nationwide with spam robocalls, in violation of the law.  Clearly, when business is generated by these marketers in New Jersey, Defendant is also specifically made aware that New Jersey consumers have been targeted by these marketers. And if Defendant had actually been monitoring the actions of the affiliates it hired, it would have similarly been aware that these affiliates were placing robocalls to phone numbers with New Jersey area codes.  *See, In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 2019 WL 7835630, at *11 (N.D.W. Va. Apr. 3, 2019) (finding that seller could be liable under the TCPA for illegal marketing of its affiliates because "Monitronics knew that Authorized Dealers were engaging in unauthorized conduct, but failed to take any effective steps to stop it until millions of illegal telemarketing calls had already been made").

Ultimately, the undisputed record in this case reflects that someone called Ms. Hague at her New Jersey phone number, represented that they were calling from Sunpath, and attempted to sell Ms. Hague a Sunpath extended auto warranty.  Even if the facts were all drawn in favor of the Defendant – in other words, the exact opposite of how such Motions to Dismiss should be evaluated – the record would still reflect that: (1) Defendant hired telemarketing affiliates to sell its extended auto warranties, (2) Defendant knew that its telemarketing affiliates were engaging in nationwide robocalls, and (3) Defendant knew or should have known that its telemarketing affiliates were engaging in illegal marketing communications with consumers.  Under such stark facts, Defendant cannot simply hide behind its affiliate agreements which require its affiliates to comply with the applicable laws.  *In re Monitronics*, 2019 WL 7835630, at *13 ("Monitronics also cannot rely on the fact that the AMPAs prohibited dealers from violating the telemarketing laws. It is obvious that Monitronics failed to enforce this provision of the AMPA, choosing instead to accept the benefit of its Authorized Dealers' illegal activity").

Under these facts, Defendant could have reasonably anticipated being haled into Court in New Jersey, based on the indiscriminate and illegal marketing activity directed to residents of New Jersey by the affiliates it hired to sell its extended auto warranties. The Supreme Court recently addressed this in *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021). There, the Supreme Court found that Ford was subject to personal jurisdiction in Montana and Minnesota for claims relating to vehicles that it designed, manufactured, and sold outside of those two states, and which were only brought into those states by resales and relocations. The Court found that even though there was no causal connection between Ford's activities and the specific incidents at issue in the lawsuits, because of Ford's deliberate availment of "a [State's] market, it must reasonably anticipate being haled into [that State's] court[s]" to defend actions "based on products causing injury there." *Id.* at 1027. The same is true here. Defendant uses telemarketing to sell its auto warranties nationwide, including in New Jersey. When its marketing causes injury in New Jersey, as it did here, it should reasonably anticipate having to defend itself in New Jersey.

In *Cardenas v. Spinnaker Resorts, Inc.*, No. CV162466JLLJAD, 2016 WL 4154921 (D.N.J. Aug. 3, 2016), the Honorable Judge Linares denied the Motion to Dismiss for lack of personal jurisdiction, in a case involving markedly similar facts. In that action, the plaintiff alleged that she received numerous calls at her home in New Jersey, from New Jersey phone numbers, and that "on each call that I answered, the telemarketer identified themselves as calling from Spinnaker Resorts". *Id.,* at 4. The *Cardenas* defendant was a time share company which claimed that it itself did not place any calls or hire any telemarketers to make these calls, and that instead its subsidiaries were the ones who hired third-party independent telemarketing companies. *See id.,* at *3-4. Nevertheless, Judge Linares denied the Motion to Dismiss, finding that "Plaintiff has sufficiently set forth 'some competent evidence'—specifically that all of the callers identified themselves as

calling from 'Spinnaker Resorts' in an effort to sell Spinnaker properties, from New Jersey numbers, to New Jersey residents—to entitle her to jurisdictional discovery." *Id.,* at 5.

While Defendant claims that it was its affiliates contacts with New Jersey, and not its own, that led to the Plaintiff's claims, that excuse does not jibe with the FCC's admonition that sellers cannot wash their hands of their marketers' conduct so easily.  At the very least, jurisdictional discovery is warranted here, to determine (1) the extent of Defendant's contacts with New Jersey (itself or through its agents), (2) Defendant's relationship with its telemarketing vendors and (3) Defendant's knowledge as to the actions of its affiliates. *See e.g., Fitzhenry v. Ushealth Grp., Inc.,* 2016 WL 319958, at *5 (D.S.C. Jan. 27, 2016) (awarding jurisdictional discovery because "while Fitzhenry has failed to allege any elements required for veil piercing or provide any evidence suggesting that Advisors has abused the corporate form or that UHG itself has contacts with South Carolina, the parties have engaged in very little if any discovery"); *Connor v. Lifewatch, Inc.*, 2014 WL 4198883, at *6 (D.S.C. Aug. 20, 2014) (granting jurisdictional discovery to determine this framed issue: "did Sirlin have direct personal involvement in some decision or action which is causally related to the telephone calls received by Plaintiff which allegedly violated the TPCA in South Carolina?").

Discovery is clearly warranted here in order to identify Defendant's contacts with New Jersey, its relationship with its telemarketing vendors, and its telemarketers' contacts with New Jersey.  As the Honorable Judge Wolfson noted, "Within the context of agency relationships, the Third Circuit has found that 'activities of a party's agent may count toward the minimum contacts necessary to support jurisdiction.' " *Cunningham v. Cap. Advance Sols., LLC*, No. CV 17-13050

(FLW), 2018 WL 6061405, at *9 (D.N.J. Nov. 20, 2018)[13], citing *Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476, 483 (3d Cir. 1993) (citation omitted*); see also, Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1226 n.5 (3d Cir. 1992) (rejecting the defendant's argument "that the contacts of their agent with the forum state cannot be attributed to them").

**D.  Defendant Cannot Use its 12(b)(2) Motion as an End-Run on the Merits.**

Defendant's Motion must be denied for a second, independent, and even simpler reason: it concedes in its own declaration all that is necessary for the Court to exercise personal jurisdiction over it.  It concedes that it hires telemarketing companies who call people in order to sell Sunpath warranties.  It also plainly knows – from years of lawsuits and its own responses to numerous BBB complaints - that these telemarketers are robocalling consumers and representing that the calls are coming from Sunpath. This is the ball game.  Defendant hired someone to telemarket for it, and, in the course of that relationship and on Defendant's behalf, that marketer caused injury in New Jersey through its unlawful robocalls to a New Jersey phone number.  By any standard, this is

---

[13] Judge Wolfson's Order in *Cunningham* is also helpful here, even though it went against the TCPA plaintiff in that action.  In *Cunningham,* the plaintiff sued a company called EBF after he received calls from a company named Capital, who was hired by EBF to telemarket on their behalf. Judge Wolfson granted the Motion to Dismiss for lack of personal jurisdiction in that case because – unlike the Plaintiff in this action - the *Cunningham* plaintiff was not called at a New Jersey phone number and did not receive the calls in New Jersey:

> The Amended Complaint does not explicitly assert that Capital directed its telemarketing activities towards New Jersey, as a result of its contractual agreement with EBF. Nor can the Court reasonably infer that Capital's telemarketing efforts targeted this state. Indeed, while Plaintiff avers that he was the recipient of Capital's solicitations, the contacted phone number is associated with an area code in Tennessee, the state in which Plaintiff resides.  Moreover, at bottom, Plaintiff does not assert that he was located in New Jersey during the time Capital allegedly contacted his cellular phone. Therefore, because Plaintiff has failed to sufficiently allege that Capital conducted "marketing activities" which "targeted the forum state of New Jersey," Plaintiff's claims against EBF are dismissed for lack of personal jurisdiction.

sufficient to establish personal jurisdiction over Defendant based on facts proffered in its own declaration.

Anything beyond that relates to whether Defendant can be held *liable* for the actions of its marketer—a merits question not properly resolvable on a 12(b)(2) Motion to Dismiss. "Where jurisdictional facts are intertwined with facts central to the substance of a case, a court must find that jurisdiction exists and consider and resolve the jurisdictional objection as a direct attack on the merits of the case." *Miller v. Ingles,* 2009 WL 4325218, at *4 (W.D.N.C. Nov. 24, 2009) (citing *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999)). Because Sunpath concedes it hired these marketers, one of whom was apparently involved with the illegal robocalls directed at - and causing injury - in New Jersey, personal jurisdiction over Defendant is proper.

### E.  Conclusion.

It is respectfully submitted that Defendant's Motion to Dismiss should be denied in its entirety.  Defendant concedes that it hires telemarketing affiliates who are hired to telemarket its auto warranties to consumers nationwide – including in New Jersey.  The Plaintiff's harms in this action arise from robocalls that those telemarketing affiliates directed specifically to New Jersey.

While Defendant claims that those affiliates went beyond what they were contractually permitted to do, this is a merits question not properly resolved on Defendant's 12(b)(2) Motion. In addition, the record reflects that Defendant has known for years that its telemarketing affiliates were acting outside the bounds of their affiliate agreements in their efforts to get more customers to sign up for the Defendant's products, yet the Defendant's principal repeatedly provides sworn statements that he was not aware of these affiliates' activities and illegal communications.  This calls into question the Defendant's efforts to monitor such repeated illegal behavior, and, relatedly, the veracity of Defendant's statements about what it really allows its marketers to do.

Based on these facts, exercising personal jurisdiction over the Defendant is plainly warranted and appropriate here.  At the very least, jurisdictional discovery should be allowed before the New Jersey Plaintiff is required to seek redress for her harms – incurred in this State - in a Massachusetts court.  FRCP 26 permits liberal discovery of any facts which are relevant and not privileged. This rule also applies where the plaintiff seeks discovery to establish personal jurisdiction.  *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 283 (3d Cir.1994), <u>citing</u> *Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 425 (D.C.Cir.1991) ("As a general matter, discovery under the Federal Rules of Civil Procedure should be freely permitted, and this is no less true when discovery is directed to personal jurisdiction").

For these reasons, it is respectfully submitted that the Defendant's Motion should be denied in its entirety.

Dated: July 6, 2021

/s/ Yitzchak Zelman
Yitzchak Zelman, Esq.
Ari H. Marcus, Esq.
*Admitted Pro Hac Vice*
**MARCUS & ZELMAN, LLC**
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone:     (732) 695-3282
Attorneys for Plaintiff